UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTOPHER MOORE,

                Plaintiff,

                                          DECISION AND ORDER

                                          05-CV-6063L

        v.

OFFICER J. CASSELBERRY,
OFFICER M. VANDERGRIFT, NURSE KAREN DYAL,
SERGEANT PORTER, OFFICER MARSHAL,
OFFICER SCOTT and OFFICER WORLE,

                Defendants.
_____

       Plaintiff Christopher Moore ("Moore"), an inmate in the custody of the New York State Department of Correctional Services, commenced this action *pro se,* asserting claims under 42 U.S.C. § 1983, for alleged violations of his constitutional rights. Moore has named six Correction Officers ("C.O.s") and Nurse Karen Dyal as defendants. The alleged constitutional violations occurred while Moore was confined at Southport Correctional Facility, where he was serving his sentence of twenty-five years to life for murder in the second degree.

       Defendants have all moved for summary judgment to dismiss the complaint (Dkt. #32). Plaintiff has filed a response to the motion (Dkt. #41).

       Plaintiff sets forth three causes of action in his *pro se* complaint (Dkt. #1). The first cause of action, which is addressed below, asserts an Eighth Amendment claim stemming from an alleged assault on plaintiff by the defendant C.O.s on November 2, 2003.

The second cause of action charges defendant Nurse Karen Dyal with filing a false or incomplete medical report. The report at issue was prepared in connection with, or shortly after, the alleged assault that plaintiff complains of in the first cause of action.

The second cause of action must be dismissed. Plaintiff's conclusory statements that the report is false are not sufficient to survive a motion for summary judgment. In any event, even if the report was incomplete or false, that does not state a federal constitutional violation. There is no basis for a constitutional claim alleging the mere filing of a false report. *See Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)*, cert. denied*, 485 U.S. 982 (1988)); *Santana v. Olson*, No. 07-Cv-0098, 2007 WL 2712992, at *2 (W.D.N.Y. Sept. 13, 2007). There is also no indication in the record that Dyal falsified her report out of deliberate indifference to plaintiff's serious medical needs, or out of any improper motive.[1]

Moreover, there is no evidence that Moore exhausted his administrative remedies as to this claim. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires inmates to exhaust all claims prior to initiating a federal court action. There is no evidence in the record that plaintiff ever filed a grievance concerning Dyal's alleged filing of a false medical report. The claim against Nurse Dyal is therefore dismissed. *See Sweet v. Wende Correctional Facility*, 514 F.Supp.2d 411, 413-14 (W.D.N.Y. 2007); *Rodriguez v. Hahn*, 209 F.Supp.2d 344, 348 (S.D.N.Y. 2002).

In his second and third causes of action, plaintiff also alleges–again in conclusory terms–that Nurse Dyal and C.O. Worle discriminated against him on account of his race, in

---

[1] At his deposition, plaintiff testified that until this incident, he had "never had no problem with Nurse Dyal ... ." Tr. at 75.

connection with his requests for sick call and his mail. These claims must be dismissed. Moore did not file a grievance regarding these matters either and the failure to file such a grievance precludes these claims as well. *Id.*

In any event, there is no evidence of intentional or purposeful discrimination by either Dyal or Worle against plaintiff based on his race. The claim is stated in the most conclusory terms and there is no evidence that plaintiff was treated from any other similarly-situated inmate, or that racial animus played any part in any acts or decisions relating to plaintiff. Even if this claim had been exhausted, then, defendants would be entitled to summary judgment on the merits.

The principal claim advanced by plaintiff is contained in his first cause of action, in which he alleges that a group of C.O.s assaulted and beat him, in violation of plaintiff's rights under the Eighth Amendment.[2] Defendants move for summary judgment on this claim on the

---

[2] In this claim, plaintiff also references certain acts of a C.O. who allegedly fondled Moore's genital area as part of a pat frisk. This activity occurred just prior to the alleged assault. I do not read Moore's complaint as alleging a separate claim of sexual abuse but even if I were to so interpret the complaint, there is insufficient evidence to support any kind of claim under the Eighth Amendment for sexual abuse or sexual harassment. The incident mentioned was neither severe nor repetitive and appears to have been part of a protective frisk, which is not uncommon or unreasonable in a maximum security facility like Southport. *See Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) (plaintiff's claim of sexual abuse was properly dismissed despite the fact that he had alleged several "despicable" incidents in which he had been "verbally harassed, touched, and pressed against without his consent" by a female correctional officer, because such isolated episodes "do not involve a harm of federal constitutional proportions as defined by the Supreme Court") (citing *Farmer v. Brennan*, 511 U.S. 825, 833-834 (1994); *Davis v. Castleberry*, 364 F.Supp.2d 319, 321 (W.D.N.Y. 2005) (allegation that C.O. grabbed inmate's penis during pat frisk held insufficient to state constitutional claim); *Montero v. Crusie*, 153 F.Supp.2d 368, 373, 375 (S.D.N.Y. 2001) (allegation that C.O. squeezed inmate's genitalia during pat frisks on several occasions did not establish Eighth Amendment violation); *Williams v. Keane*, No. 95 CIV. 0379, 1997 WL 527677, at *4 (S.D.N.Y. Aug. 25, 1997) (allegation that
(continued...)

ground that plaintiff's allegations and testimony concerning this claim are incredible as a matter of law and that no reasonable jury could credit the claims.

In support of that argument, defendants rely on the Second Circuit's decision in *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005). In *Jeffreys*, the plaintiff sued several police officers under § 1983, alleging that they had assaulted him and thrown him out of a third-story window. Shortly after the incident giving rise to his claim, however, and long before he filed his federal complaint, the plaintiff had told a number of witnesses that he had either jumped or fallen out of the window, and that he had not even seen any police officers until after he hit the ground. In addition, the medical evidence was inconsistent with plaintiff's allegations of having been hit in the head with a flashlight prior to being thrown out the window. *Id.* at 552-53.

Affirming the district court's grant of summary judgment for the defendants, the Second Circuit acknowledged the general rule that "[w]hen considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor," and that a court faced with such a motion "must ask not whether ... the evidence unmistakably favors ones side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.* at 553 (internal quotation marks and alterations omitted).

The court also stated, however, that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury

---

<sup>2</sup>(...continued)
C.O. put his hand down inmate's pants and fondled inmate's genitals during pat frisk failed to state constitutional claim).

could reasonably find for the plaintiff." *Id.* at 554 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). "At the summary judgment stage," the court said, "a nonmoving party 'must offer some hard evidence showing that its version of the events is not wholly fanciful.'" *Id.* (quoting *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir.), *cert. denied*, 524 U.S. 911 (1998)).

Applying those principles to the record before it, the Second Circuit concluded that although "there [we]re many material issues of fact disputed in the instant case, ... there were no *genuine* issues of material fact in the instant case–that is, that even after drawing all inferences in the light most favorable to Jeffreys, no reasonable jury could have issued a verdict in his favor." *Id.* The court added that

> [w]hile it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether "the jury could reasonably find for the plaintiff," *Anderson*, 477 U.S. at 252, and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account. Under these circumstances, the moving party still must meet the difficult burden of demonstrating that there is no evidence in the record upon which a reasonable factfinder could base a verdict in the plaintiff's favor.

*Id.*

In the case at bar, there are certainly undisputed, or indisputable, facts in the record that cast doubt upon the veracity of some of plaintiff's allegations. First, plaintiff admitted at his deposition that he was on "psych meds" at the time of the incident in question. Plaintiff's Deposition Transcript ("Tr."), Dkt. #33, at 13. He stated that he was on this medication because

- 5 -

he "was hearing voices," which would "start messing with [him] when [he] was stressed out." *Tr.* at 19.  He stated, "sometimes they tell me, like, to hurt the police ... ."  Tr. at 19-20.

Plaintiff also testified that when the alleged assault began, defendants pushed him "[o]nto the shower door," and then "thr[ew him] on the floor" and began "kicking," "sticking," and "jumping on" him.  Tr. at 26.  Plaintiff said that when defendants threw him onto the floor, he "went face first on the floor," and that he "landed hard on the floor."  Tr. at

Plaintiff testified that after he hit the floor, defendant Worle "grab[bed his] throat," and that defendant Casselberry attempted to stuff his baton in plaintiff's mouth.  Tr. at 28-29.  Plaintiff said that defendants also kicked him in his face, stomach, side and legs about twenty times.  Plaintiff stated that the kicks that were administered by defendant Vandergrift "wasn't soft" kicks, and when asked if Vandergrift's kicks were similar to "how [a football player] kicks off and takes that big wind up," he replied, "Yeah, he kicked me."  Tr. at 31.  Plaintiff also testified that Vandergrift struck him in the leg with his baton.  Tr. at 31-32.

A little later in his testimony, plaintiff stated that he "wasn't kicked in the face," but rather "was punched in [his] face."  Tr. at 32.  He estimated that he was punched in the face about ten times.  Tr.  He added that "they weren't no soft punches," that he "was feeling black eyes, scratches on [his] face," and that he was punched "really hard."  Tr. at 33.  Plaintiff also said that "[t]hey was hitting [him] in [his] back with the sticks."  Tr. at 33-34.  Plaintiff estimated that this beating lasted about ten minutes.  Tr. at 35.

Next, according to plaintiff, defendants picked him up off the floor, and led him, in handcuffs and leg restraints, to a stairwell, where they threw him down the steps.  Tr. at 40.

Plaintiff said that he was thrown "from the third floor steps, down to the next steps," *i.e.*, "to the landing part," and that he "landed hard on [his] back ... ." Tr. at 43, 44.

Plaintiff testified that defendants then picked him up again and walked him the rest of the way down the stairs and to a shower area, where plaintiff remained until Nurse Dyal arrived. Dyal took some notes on her observations of plaintiff, the accuracy of which plaintiff partly disputes. For example, Dyal wrote that plaintiff "ambulated well," but plaintiff testified that at that point, he "couldn't move" because he was in so much pain. Tr. at 50.

In support of their motion, defendants contend that plaintiff's testimony is so incredible as a matter of law that no reasonable juror could accept it, that there is no other evidence to support plaintiff's claims, and that the Court should therefore grant summary judgment in defendants' favor.

Certainly there is evidence in the record that tends to undercut plaintiff's allegations and testimony. For example, defendants have submitted a videotape of plaintiff being escorted by some officers, following the incident, to an area where photographs are taken of his alleged injuries. In the video, plaintiff appears to have no difficulty walking. In addition, both in the video and in the photographs (copies of which are attached to defendants' motion), plaintiff appears to have no more than minor scratches or abrasions on his face. His visible injuries are hardly consistent with what one would expect to see on someone who just a short time earlier had been kicked, punched, and hit with batons–"hard"–about the face, torso and legs, for ten minutes.

Nevertheless, I do not believe that defendants are entitled to summary judgment on plaintiff's excessive-force claim. Although the evidence in the record casting doubt on plaintiff's credibility, resolution of this claim remains dependent on an assessment of his and defendants' credibility, which is for the factfinder to make.

I recognize that a plaintiff's version of events need not be literally impossible for a court to reject it on a motion for summary judgment. *See Seshadri v. Kasraian*, 130 F.3d 798, 802 (7th Cir. 1997) (stating that "the test [for rejecting testimony as a matter of law] of physical impossibility is not exhaustive" and that the governing principle is that "testimony can and should be rejected without a trial if, in the circumstances, no reasonable person would believe it").

As the Second Circuit recognized in *Jeffreys*, however, such cases are rare. 426 F.3d at 554; *see also In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998) ("[t]he exceptional category [in which courts may reject testimony as incredible as a matter of law] is–exceptional"). In that regard, it bears repeating that the court in *Jeffreys* stated that even "in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, ... *the moving party still must meet the difficult burden* of demonstrating that there is no evidence in the record upon which a reasonable factfinder could base a verdict in the plaintiff's favor." *Id.* (emphasis added). In other words, just because the plaintiff's claim is based solely upon his own contradictory and incomplete testimony, that does not automatically entitle the defendants to summary judgment. The evidence must be such that no reasonable juror could believe it.

The facts of *Jeffreys* demonstrate that it *was* one of the rare cases in which the district court could properly find the plaintiff's testimony incredible as a matter of law, and, on that ground, grant summary judgment for the defendants. The plaintiff in *Jeffreys* had gone from stating, shortly after the incident, that he had jumped or accidentally fallen out of a window, and that he had not seen any police officers until after he hit the ground, to claiming, months later, that the police had burst into the room where he was and thrown him out the window. In addition, the medical evidence contradicted the plaintiff's allegation that just before being thrown out the window, he had been struck in the head by one of the police officers with a flashlight.

As another district court has put it, the plaintiff's story in *Jeffreys* was "spectacularly outlandish." *Brown v. City of Oakland*, No. C03-1141, 2006 WL 1760747, at *8 (N.D.Cal. June 27, 2006). The *Jeffreys* court itself stated that it would require a "suspension of disbelief" for a jury to credit the plaintiff's allegations. 426 F.3d at 555.

Although, as stated, plaintiff's deposition testimony in the case at bar is, in some respects, of highly doubtful veracity, it is not so thoroughly disproven by the record that the Court may reject it as a matter of law. It does appear that plaintiff, at his deposition, exaggerated the extent of his injuries, and there are some details about which he has been inconsistent or contradicted himself. In spite of that, I do not believe that the Court should simply reject his testimony as unworthy of belief, as a matter of law, for a number of reasons.

First of all, it does appear that plaintiff may have sustained *some* injuries on the date of the alleged incident.. Although the photographic and video evidence do not indicate the severe injuries that one might expect to see based on his testimony about the assault, he does appear to

have some bruises, scrapes or lacerations on his face. Although plaintiff contends that Nurse Dyal omitted some of his injuries in her report following the incident, *see* Tr. at 47-50, she did note that he had some scratches on his head and that he was complaining of pain in the back of his head. Tr. at 49. Although plaintiff may have exaggerated the extent of his injuries, or the severity of the assault, that does not mean that no assault occurred. *Payne v. Dickerson*, No. 3:07CV3, 2008 WL 1724003, at *8 (N.D.Miss. Apr. 10, 2008) (stating, in Fourth Amendment excessive-force case, that although "[t]he lack of any substantial injury ma[de plaintiff's] version of events sound exaggerated at best" and that plaintiff's "proof appear[ed] questionable," whether defendants used excessive force in effectuating plaintiff's arrest should be determined by a jury); *Stokes v. Porretto*, No. G-04-0596, 2006 WL 2844172, at *12 (S.D.Tex. Sept. 29, 2006) ("Whether Stokes is exaggerating the injuries he received or the amount of force used cannot be resolved at the summary judgment stage").

In addition, defendants have not offered an alternative version of the relevant events. They have submitted affidavits by defendants Corter and Worle (Dkt. #34 and 36) essentially stating that they were not even present at the scene of the alleged assault, but there is no affidavit or testimony from Casselberry, who, according to plaintiff, initiated the assault, nor have they explained how plaintiff suffered the bruises to his face, or explained why a video and photographs were taken of plaintiff in the first place. *Cf. Scott v. Harris*, ___ U.S. ___, 127 S.Ct. 1769, 1776 (2007) ("When opposing parties tell *two different stories*, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt

that version of the facts for purposes of ruling on a motion for summary judgment") (emphasis added).

The fact that plaintiff was on "psych meds" because he was "hearing voices" is also an insufficient basis upon which to reject his testimony as a matter of law, even if it is a factor that the finder of fact may consider in assessing his credibility. *See Balentine v. Shockley*, No. 04-4012, 2005 WL 3336519, at *3 (W.D.Mo. Dec. 7, 2005) ("although a mentally impaired person is not prevented from bringing suit for excessive use of force; plaintiff's mental capacity, in the instant case, is relevant and admissible at trial in support of defendants' position that plaintiff's claims are delusional").

Likewise, while there are some discrepancies between plaintiff's deposition testimony and the allegations set forth in his complaint about the details of the alleged assault, those discrepancies go to the weight to be accorded to plaintiff's testimony. They may be fair game for argument to the jury, but they are not so egregious as to render plaintiff's testimony unbelievable as a matter of law.

Finally, I note that defendants have also submitted a videotape showing the corridor outside the room where the alleged assault took place, at the time of the alleged assault. The video shows plaintiff entering the room, after which he remains off-camera.

Defendants contend that the video refutes plaintiff's allegation that Worle took part in the assault, because at his deposition plaintiff identified a C.O. seen on the tape as Worle, and Worle is never seen entering the room where the alleged assault occurred. Instead, Worle can be seen suddenly running down the corridor, away from the room, until he too is off-camera.[3]

---

[3]There is no audio on the tape, but it appears from Worle's behavior and that of other C.O.s who can be seen quickly entering the room that some sort of trouble has broken out in the
(continued...)

The video abruptly ends, however, with plaintiff still apparently in the room, and Worle still off-camera. It is possible, then, that Worle reappeared and entered the room after the recording ends. Although that may still undercut plaintiff's testimony that Worle grabbed him by the throat almost immediately after the assault began, that too is simply fodder for cross-examination and argument at trial. Certainly it is not unthinkable that an assault victim's memory of the precise sequence or timing of the events might be less than perfect, but that alone does not mean that the events did not occur at all. *See Ford v. Phillips*, No. 05 Civ. 6646, 2007 WL 946703, at *8 (S.D.N.Y. Mar. 27, 2007) ("Whereas a complete video [of the incident in question] might dispel all issues of fact regarding Ford's transfer [during which the alleged assault occurred], an incomplete video cannot"); *Brown v. Mravintz*, No. CIV A 04-30J, 2006 WL 3717417, at *9 (W.D.Pa. Dec. 14, 2006) (denying summary judgment in excessive-force case where "the court [wa]s not capable of determining from the [video]tape, that it was physically impossible for Defendant Pritts to have kicked Plaintiff," as contended by defendants).

In short, although the credibility of plaintiff's testimony concerning the alleged assault is certainly inconsistent with other evidence and is subject to serious question, it is not so blatantly false that the Court may simply reject it as a matter of law. Summary judgment on this claim is therefore inappropriate. *See Rossi v. Stevens*, No. 04-CV-01836, 2008 WL 4452383, at *5 (S.D.N.Y. Sept. 30, 2008) (stating that "[t]hough plaintiff's evidence is minimal–it consists primarily of his own testimony–it is nevertheless sufficient to indicate the existence of a disputed material fact as to whether the force allegedly applied to him was wanton and unnecessary," and

---

[3](...continued)
room.

that though the evidence indicated that plaintiff's injuries were "not terribly severe, [they we]re sufficient to satisfy Plaintiff's relatively light burden" to show that the force used was excessive); *Seabolt v. City of Muskogee*, No. CIV-07-255, 2008 WL 4693131, at *3 n. 2 (E.D.Okla. Sept. 24, 2008) ("Plaintiff's account of the facts is neither so inherently incredible that no reasonable jury could believe it nor blatantly contradicted by the record"); *Sanabria v. Martins*, 568 F.Supp.2d 220, 228 (D.Conn. 2008) (although plaintiff's "testimony [wa]s indeed contradictory in part and inconsistent with the accounts of other witnesses, ... Plaintiff's testimony d[id] not come close to the 'incredulous' account rejected by the court in *Jeffreys*"); *Johnson v. Niehus*, No. CV 105-125, 2007 WL 1185675, at *9 (S.D.Ga. Apr. 18, 2007) (although "Plaintiff's testimony ... [wa]s difficult to square with the evidence of record," that testimony was "not so outrageous or implausible that no reasonable juror could believe ... his testimony").

## CONCLUSION

Defendants' motion for summary judgment (Dkt. #32) is granted in part and denied in part.  Plaintiff's second and third causes of action (which include all of his claims against defendant Nurse Karen Dyal) are dismissed with prejudice.  In all other respects, defendants' motion is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       November 3, 2008.